BAUMGARTNER, Respondent, vs. FARWELL SALES COMPANY and another, Appellants. [Two appeals.]

*March 8—April 3, 1923.*

*Sales: Purchase from one who has no title: Estoppel: Caveat emptor.*

Where plaintiff purchased an automobile with the advice and assistance of a friend, who made the initial payment with money belonging to the plaintiff, and who, without her knowledge and contrary to her instructions, executed the sales agreement in his own name, and, after the car had been delivered to plaintiff and was in her exclusive possession, without her knowledge removed and sold it to defendant, which made no inquiry as to its true ownership except an examination in the city clerk's office for incumbrances, the defendant, under sub. 1, sec. 1684t—23, Stats., acquired no title, as the seller had none, and the plaintiff was not estopped to claim title, the doctrine of *caveat emptor* applying under the facts of the case.

APPEALS from a judgment of the circuit court for Milwaukee county: GUSTAVE G. GEHRZ, Circuit Judge. *Affirmed.*

The appeals are from a judgment in replevin in favor of the plaintiff and against the defendant *Farwell Sales Company* and the *United States Fidelity & Guaranty Company,* surety on the undertaking of said *Sales Company,* on an appeal from a judgment in plaintiff's favor in the civil court of Milwaukee county, such judgment in the circuit court being based upon the record of the civil court and affirming the judgment of the civil court.

The plaintiff, a widow, having $2,000 in cash, in July, 1921, concluded to purchase an automobile, and requested one Elliott, an acquaintance with whom she had kept company for a period of about six months, to aid and assist her in such purchase. The two parties named, together with one Dankert and his wife, thereupon proceeded to the Koehler-Rahn Auto Company at Milwaukee, agents for the Elgin automobile, and inspected a number of cars, and selected for purchase a certain Elgin Six Scout automobile, costing the sum of $1,785. The car being guaranteed for ninety days, it was thought advisable not to pay the full amount of the purchase price, but to retain the sum of $285 as a protection on the guaranty. The sum of $1,500 was thereupon paid to the Auto Company, and the latter prepared a conditional-sales agreement by which it retained title, subject to the payment of the balance of the purchase price. The plaintiff, having theretofore handed to Elliott the sum of $2,000, requested him to secure the sales agreement in her name and to sign her name thereto. Without plaintiff's knowledge, and contrary to her instructions, Elliott executed the agreement in his own name, and the Elgin automobile was thereupon taken from the Auto Company's premises and driven by Mrs. Dankert (the other parties being passengers in the car) to the summer home of the Dankerts at Okauchee Lake. The

Baumgartner v. Farwell Sales Co. 180 Wis. 301.

record does not disclose that Elliott thereafter, at the request or with the consent of the plaintiff, either had possession of or exercised any control over the car.

During a few days after arriving at the Dankert home a number of trips were taken in the car, during all of which time the car was driven by Mrs. Dankert, and thereafter all of the parties proceeded in the car to the Dankert saloon in the city of Milwaukee, Mrs. Dankert driving, and upon arriving at the latter place, upon the advice of the Dankerts, the plaintiff and Mrs. Dankert stored the car in a garage in which the Dankerts kept their own car.

Elliott, after the purchase of the car as aforesaid, handed to Mr. Dankert out of the balance of the money in his hands the sum of $285, with which to enable the latter to redeem the car from the conditional-sales agreement. Several days after the car had been left at the garage, Elliott, without the knowledge and consent of the plaintiff, wrongfully had the car removed and taken to the defendant *Farwell Sales Company,* where he attempted, by a bill of sale in which he warranted the title, to transfer the same to such *Sales Company,* taking in exchange therefor one of the *Sales Company's* cars. At the time of such exchange the defendant *Sales Company* was represented by one Harriman, one of its officers, who had no acquaintance whatever with either the plaintiff or Elliott. No effort or inquiry was made by the representative of the defendant *Sales Company* respecting the identity of Elliott or in regard to his actual ownership of the car. Inquiry, however, was made at the office of the city clerk of Milwaukee to ascertain whether an incumbrance was on file against the car, and this inquiry appears to be the only effort made in relation to the transaction. The Koehler-Rahn Auto Company did not file its conditional-sales agreement until the day after the above exchange of cars had been made. When the plaintiff discovered that the car had been wrongfully removed from the garage and that

the same was in the possession of the defendant *Sales Company*, she paid the balance due upon the car to the Koehler-Rahn Auto Company, and demanded of the defendant *Sales Company* the possession and delivery of the car, which was refused, and thereupon she brought the action of replevin in the civil court of Milwaukee county.

The civil court found all of the necessary facts in issue in favor of the plaintiff, and pursuant to a stipulation entered into by and between the parties the automobile was delivered by the sheriff to the defendant *Sales Company*, with authority to sell the same for the sum of $1,000 upon the payment by the purchaser of the sum of $500 and the execution of a note for the balance, secured by a chattel mortgage on the car. Under this stipulation it was agreed that the proceeds of said sale were to be held by the defendant in lieu of the car, and to abide the results of the action, and to be delivered to the successful party.

For the appellants there was a brief by *Bloodgood, Kemper & Bloodgood*, attorneys, and *Eric Wm. Passmore*, of counsel, all of Milwaukee; and the cause was argued orally by *Mr. Passmore*.

For the respondent the cause was submitted on the brief of *Arthur R. Barry* and *Benjamin T. Schiek*, both of Milwaukee.

DOERFLER, J.  Sub. 1, sec. 1684*t*—23, of the Statutes provides:

"Subject to the provisions of this act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."

Under the above statement of facts, for which there is

Baumgartner v. Farwell Sales Co. 180 Wis. 301.

ample support in the evidence, did the civil court properly determine that the plaintiff was the owner of the car in question and that the defendant *Sales Company* wrongfully detained the possession of such car after due demand having been made of it to deliver the same to the plaintiff? The money paid on the purchase of the car belonged to the plaintiff. The evidence establishes the fact not only that Elliott merely acted as plaintiff's agent in the negotiations which culminated in the purchase, but that an express demand was made by the plaintiff to Elliott to sign her name to the conditional-sales agreement. In violation of his instructions Elliott executed this agreement in his own name, and the record quite clearly discloses the fact that as far as the Auto Company is concerned the latter was led to believe that Elliott was the real purchaser.

If the present controversy were one between the Auto Company and the plaintiff, there would be little difficulty in arriving at the conclusion that the plaintiff was guilty of creating a situation which would preclude her from claiming title to the automobile as against Elliott. If, in fact, after the purchase of this car and before its delivery to the plaintiff, Elliott had thereupon sold the car to an innocent purchaser for value, such purchaser would have obtained good title.

The facts in this case, however, materially differ from those involved in the case of *Phelps v. McQuade,* 220 N. Y. 232, 115 N. E. 441, cited in appellant's brief. In that case one Walter J. Gwynne falsely represented to the appellants that he was Baldwin J. Gwynne, a man of financial responsibility residing at Cleveland, Ohio. Relying upon the truth of this statement, the appellants delivered to him upon credit a quantity of jewelry. Gwynne in turn sold it to the respondent, who bought it without notice, express or implied, of any defect in title, and for value. Learn-

ing of the deception practiced upon them, the appellants began an action in replevin to recover the goods. The court in that case held that the title to the property passed from the seller, and the innocent purchaser obtained good title.

If in the *Phelps Case* the goods had actually been delivered to Baldwin J. Gwynne, and Walter J. Gwynne thereafter had wrongfully taken the goods from the possession of Baldwin J. Gwynne and had then sold them to the innocent purchaser, a situation would have arisen similar to the one existing in the instant case.

In the case at bar, under all the facts and circumstances, the trial court could properly determine that the automobile was actually delivered into the possession of the plaintiff and that she retained such possession from that time on, until Elliott, by wrongfully taking the car, deprived her of such possession. If Elliott in fact was the agent of the plaintiff, the delivery of the car by him to her (assuming that as between the Auto Company and Elliott the latter obtained title) amounted to a transfer of title to the plaintiff. What Elliott in fact did was to consummate his agency by delivering the purchased car into the possession of the plaintiff. Other cases cited in appellant's brief are not materially different from the *Phelps Case*.

Defendants' counsel also contend that plaintiff by her acts created a situation which precludes her from denying Elliott's authority to sell. None of the facts relating to the transaction which took place at the time of the purchase of the automobile from the Koehler-Rahn Auto Company were at the time of the attempted sale to the defendant *Sales Company* within the knowledge of such *Sales Company*. No effort was made by the representative of the *Sales Company* to establish the identity of Elliott as the owner of the car, and, in fact, Harriman, such representative, had never seen either Elliott or the plaintiff before.

. Under the facts in this case the doctrine of *caveat emptor* applies.   In 24 Ruling Case Law, p. 373, § 662, it is said: ·

"It is a general\ rule as regards personal property that title, like a stream, cannot rise higher than its source; and therefore it is a general principle that no one can transfer a better title than he has, unless some principle of estoppel comes into operation against the person claiming under what would otherwise be the better title."

We therefore hold that when Elliott attempted to transfer title to the automobile to the defendant *Sales Company* he had no title, and consequently the *Sales Company* received no title, and that the plaintiff was not guilty of any acts in the premises which would estop her from claiming title as against such *Sales Company*.

The judgment of the circuit court, both as to the defendant *Sales Company* and the *Surety Company,* must therefore be affirmed.

*By the Court.*—Judgment affirmed.